**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **STEPHEN BRAZELTON,** | : | |
| **Plaintiff** | : | **CIVIL ACTION NO. 4:10-1223** |
| **v.** | : | **(CALDWELL, D.J.)** |
| | | **(MANNION, M.J.)** |
| **RONNIE R. HOLT, Warden, and C.O. ORNER,** | : | |
| | : | |
| **Defendants** | : | |
| | : | |

## REPORT AND RECOMMENDATION[1]

Pending before the court are the plaintiff's motion for sanctions, (Doc.

No. 29)[2], and the defendants' motion to dismiss and for summary judgment,

(Doc. No. 78). Based upon the court's review of the motions and related

materials, it is recommended that the plaintiff's motion be denied, the

defendants' motion be granted in part and dismissed in part, and the instant

action be closed.

_____

[1]For the convenience of the reader of this document in electronic format, hyperlinks to the court's record and to authority cited have been inserted. No endorsement of any provider of electronic resources is intended by the court's practice of using hyperlinks.

[2]The plaintiff has also filed this motion as one for summary judgment pursuant to Fed.R.Civ.P. 56 and the defendants have attempted to respond to the motion as such. However, upon review, the plaintiff only seeks to have summary judgment entered in his favor as a form of sanction against the defendants for allegedly intentionally destroying relevant videotape evidence. Moreover, the plaintiff has not filed the requisite statement of material facts with relevant record citations as required by Local Rule 56.1 in order to have his motion considered as one for summary judgment. As such, the motion will be considered only as a motion for sanctions.

## I.   PROCEDURAL HISTORY

By way of relevant procedural background, the plaintiff filed the instant Bivens[3] action on June 9, 2010, (Doc. No. 1), along with an application for leave to proceed in forma pauperis, (Doc. No. 2), and a prisoner authorization form, (Doc. No. 3). On June 15, 2010, an administrative order was sent directing the Superintendent/Warden to deduct monies from the plaintiff's inmate account for purposes of satisfying the applicable filing fee. (Doc. No. 5).

By order dated June 24, 2010, it was directed that process issue. (Doc. No. 6).

After having been granted an extension of time to do so, (Doc. No. 12), on November 16, 2010, the defendants filed an answer to the plaintiff's complaint with affirmative defenses, (Doc. No. 13).

By order dated November 22, 2010, it was directed that discovery be completed by May 16, 2011, and dispositive motions be filed on or before June 1, 2011. (Doc. No. 14).

On February 15, 2011, the plaintiff filed his currently pending motion for sanctions. (Doc. No. 29). Accompanying the plaintiff's motion were various exhibits, (Doc. No. 30), and the plaintiff's affidavit, (Doc. No. 31). On March

---

[3]Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics, 403 U.S. 388 (1971).

18, 2011, the defendants filed a declaration and compact disc in response to the plaintiff's motion, (Doc. No. 39), which are currently under seal by order of court, (Doc. No. 47). After having been granted extensions of time to do so, (Doc. No. 37, Doc. No. 49), on March 31, 2011, the defendants filed a brief in opposition to the plaintiff's motion, (Doc. No. 51). On May 11, 2011, the plaintiff filed a supplement to his motion. (Doc. No. 68). The defendants filed a response to the plaintiff's supplement on May 25, 2011, (Doc. No. 71), along with a statement of facts, (Doc. No. 72).

On June 1, 2011, the defendants filed their currently pending motion to dismiss and for summary judgment. (Doc. No. 78). After having been granted an extension of time to do so, (Doc. No. 83), on June 21, 2011, the defendants filed a statement of material facts with exhibits, (Doc. No. 84), and a brief in support of their motion, (Doc. No. 85). The plaintiff filed an opposing brief on July 8, 2011, (Doc. No. 88), along with a declaration, (Doc. No. 89), and a response to the defendants' statement of facts, (Doc. No. 91).

## II.   PLAINTIFF'S COMPLAINT

In his complaint, the plaintiff alleges that, on or about June 17, 2009, at approximately 3:45 p.m., defendant Orner, acting under the authority of defendant Holt, either negligently or intentionally slammed the plaintiff's fingers in his cell door while locking down inmates for count. As a result of this, the plaintiff alleges that he is in constant pain and suffering, and that his

injuries have accelerated the onset of arthritis in his hand. Because he is a carpenter/concrete finisher by trade, the plaintiff alleges that his injuries will effect his ability to perform his profession.

Based upon the above allegations, the plaintiff is seeking compensatory and punitive damages. He is further seeking to have defendant Orner suspended from his duties.

## III.   PLAINTIFF'S MOTION FOR SANCTIONS

In his motion for sanctions, the plaintiff argues that "[t]he major reason for summary judgment in favor of the plaintiff is (destruction of the video tapes) by the B.O.P. staff, in violation of B.O.P. policy statement 1240.05[4]."

---

[4]The plaintiff has provided a copy of Program Statement 1240.05, which relates to Records and Information Management Programs. In addition, he has attached a page of material marked "Page 3 of 3" with no additional pages, which provides in relevant part:

> 5. S.I.S. CLEARED VIDEOTAPES
>
> Videos which document staff/inmate interaction outside of the use of force or prohibited actions, and which do not have a corresponding case file.
>
> Retention: Temporary.
>
> Guidance: Destroy or recycle when 90 days old or when no longer needed for legal evidence or operational purposes, whichever is later.

(Doc. No. 30, Ex. K).

(continued...)

4

The plaintiff alleges that the defendants deliberately destroyed six videos of the incident which occurred on June 17, 2009, in order ". . . to thwart discovery and due process of law . . ." The plaintiff argues that had the tapes still existed "[t]he court would have reviewed the tapes 'in camera' and ruled, by summary judgment in favor of any party." By destroying the tapes, the plaintiff argues that the defendants have "effectively 'cheated' the courts and plaintiff of true exact facts, and committed 'fraud' upon this court." The plaintiff argues that the defendants were put on notice by his request for administrative relief, which was filed within the 90 days provided for in Program Statement 1240.05, and subsequent appeals that the tapes should have been preserved. He argues therefore that ". . . the law requires 'summary judgment' in favor of the plaintiff, to deter future repetition of this conduct upon this court and any plaintiff on a (Bivens) suit."

In considering the plaintiff's motion, spoliation is "the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." Ogin v. Ahmed, 563 F.Supp.2d. 539, 542 (M.D.Pa. 2008). In assessing a spoliation claim, the following factors are considered: (1) the evidence in question must be within the party's control; (2) it must appear that there has

_____

[4](...continued)
Upon review of Policy Statement 1240.05, as provided on the BOP website, this material is not part of Program Statement 1240.05 and is of an unknown origin.

been actual suppression or withholding of the evidence; (3) the evidence destroyed or withheld was relevant to claims or defenses; and (4) it was reasonably foreseeable that the evidence would later be discoverable. Ogin, 563 F.Supp.2d at 543. "A party which reasonably anticipates litigation has an affirmative duty to preserve relevant evidence. Baliotis v. McNeil, 870 F.Supp. 1285, 1290 (M.D.Pa. 1994).

Where evidence is destroyed, sanctions may be appropriate. Schmid v. Milwaukee Elec. Tool Corp., 13 F.3d 76, 78 (3d Cir. 1994). If the court finds that there is a culpable destruction or spoliation of evidence, an appropriate sanction for the spoliation must be determined.

> The United States Court of Appeals for the Third Circuit has applied three (3) key considerations to determine whether a sanction for spoliation of evidence is appropriate. Schmid, 13 F.3d at 79. The considerations are: 1) the degree of fault of the party who altered or destroyed the evidence; 2) the degree of prejudice suffered by the opposing party; and 3) whether there is a lesser sanction that will avoid substantial unfairness to the opposing party and, where the offending party is seriously at fault, will serve to deter such conduct by others in the future. Id. When appropriate, a court may impose any potential sanction including: 1) dismissal of a claim or granting judgment in favor of a prejudiced party; 2) suppression of evidence; 3) an adverse inference, referred to as the spoliation inference; 4) fines; and 5) attorneys' fees and costs. Mosaid, 348 F.Supp.2d at 335.

Ogin, 563 F.Supp.2d at 545.

In the present action, even assuming that the destruction of the video recordings at issue was intentional, there is no indication from the record that the plaintiff has suffered any real prejudice as a result of not having the video

Case 4:10-cv-01223-WWC   Document 94   Filed 08/04/11   Page 7 of 28

recordings[5]. Initially, the defendants have admitted that an incident occurred on June 17, 2009, wherein the plaintiff's hand was shut in the cell door. The relevant dispute in the instant action is the intent of defendant Orner in relation to the incident. There is nothing on the record before the court which would indicate that the video recordings at issue would establish defendant Orner's intent in relation to the incident at hand.

Moreover, even without the video recordings, the plaintiff himself was able to testify at his deposition as to what occurred on the day in question. Further, he has attached to his motion affidavits from several inmates who purport to be witnesses to the incident of June 17, 2009, as well as photographs of his injured fingers. Finally, the record contains the plaintiff's medical records related to the incident which would indicate the extent of the plaintiff's injuries.

In light of the above, there is no indication that the plaintiff has suffered any real prejudice as a result of not having the video recordings and it is recommended that the plaintiff's motion for sanctions in the form of entry of

---

[5]The court assumes for purposes of the instant motion that, under the first factor for determining whether sanctions are appropriate, the defendants would bear some degree of fault in the destruction of the video recordings which were under their control.

7

summary judgment in his favor be denied[6]. See Paluch v. Dawson, 2009 WL 3287395 (M.D.Pa.) (Rambo, J.) (denying motion for summary judgment or, in the alternative, for spoliation charge, where videotape evidence was intentionally destroyed by defendants in the normal course of operations on the basis that the plaintiff had failed to show that he had suffered any prejudice as a result of not having the videotapes)[7].

## IV.   DEFENDANTS' MOTION TO DISMISS AND FOR SUMMARY JUDGMENT

To the extent that the defendants' motion is brought pursuant to the provisions of Fed.R.Civ.P. 12(b)(1),

> "A motion to dismiss under Rule 12(b)(1) challenges the jurisdiction of the court to address the merits of the plaintiff's complaint." Vieth v. Pennsylvania, 188 F.Supp.2d 532, 537 (M.D.Pa. 2002) (quoting Ballenger v. Applied Digital Solutions, Inc., 189 F.Supp.2d 196, 199 (D.Del. 2002). The motion should be granted where the asserted claim is "insubstantial, implausible, foreclosed by prior decisions of this Court, or otherwise completely devoid of merit as not to involve a federal controversy." ORG, Ltd. v. Nartron Corp., 513 F.Supp.2d 149, 151-52 (M.D.Pa. 2007) (citing Coxson v. Pennsylvania, 935 F.Supp. 624, 626 (W.D.Pa. 1996)).

---

[6] Since the court finds no prejudice to the plaintiff as a result of the destruction of the video recordings, the court need not discuss the third factor, whether there is a lesser sanction that would avoid substantial unfairness to the plaintiff.

[7] For the convenience of the reader, the court has attached copies of unpublished opinions cited within this document.

A motion to dismiss pursuant to Rule 12(b)(1) may be treated as either a facial or factual challenge to the court's subject matter jurisdiction. Gould Elecs. Inc. v. United States, 220 F.3d 169, 176 (3d Cir. 2000). When evaluating a factual attack, the court may consider evidence outside the pleadings. Gould Elecs. Inc., 220 F.3d at 176. The Plaintiff bears the burden of proving that jurisdiction exists. Edmunds Holding Co. v. Autobytel Inc., 598 F.Supp.2d 606, 608 (D.Del. 2009).

First Quality Baby Products, LLC v. Kimberly-Clark Worldwide, Inc., 2009 WL 1675088 (M.D.Pa.) (Caldwell, J.).

In support of their motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(1), the defendants argue that sovereign immunity bars any claim against them in their official capacity. (Doc. No. 85, pp. 10-13). In response, the plaintiff argues that the defendants are being sued in both their individual and official capacities and that the defendants' argument regarding sovereign immunity is therefore moot because it challenges only one out of two bases for jurisdiction.

With respect to the defendants' argument, a federal court is without jurisdiction to entertain a suit for money damages against the United States or its agencies unless sovereign immunity has expressly been waived. United States v. Mitchell, 445 U.S. 535, 538 (1980); United States v. Testan, 424 U.S. 392, 399 (1976); United States v., Sherwood, 312 U.S. 584, 586 (1941). The doctrine of sovereign immunity extends to individual officers sued in their official capacity, because an official capacity suit is "only another way of

pleading an action against an entity of which an officer is an agent." Forbes
v. Reno, 893 F.Supp. 476 (W.D.Pa. 1995) (citing Kentucky v. Graham, 473
U.S. 159, 165 (1985)). The plaintiff has brought this action pursuant to 28
U.S.C. §1331.  However, this statute does not constitute a waiver of sovereign
immunity. Forbes v. Reno, 893 F.Supp. 476, 481 (W.D. Pa. 1995) (citing B.K.
Instrument, Inc. v. United States, 715 F.2d 713, 724 (2d Cir. 1983); Holloman
v. Watt, 708 F.2d 1399, 1401 (9th Cir. 1983)). In fact, there is no sovereign
immunity waiver for claims of constitutional violations. See F.D.I.C. v. Meyer,
510 U.S. 471 (1994) (holding that Bivens suit may not be maintained against
the United States or its agencies). Therefore, to the extent that the plaintiff is
bringing the instant action against the defendants in their official capacity, the
defendants' argument is not moot; further, the defendants' motion should be
granted to the extent that the plaintiff's complaint should be dismissed against
the defendants in their official capacity on the basis of sovereign immunity.

To the extent that the defendants' motion is brought pursuant to
Fed.R.Civ.P. 12(b)(6), this Rule provides for the dismissal of a complaint, in
whole or in part, if the plaintiff fails to state a claim upon which relief can be
granted. The moving party bears the burden of showing that no claim has
been stated, Hedges v. United States, 404 F.3d 744, 750 (3d Cir. 2005), and
dismissal is appropriate only if, accepting all of the facts alleged in the
complaint as true, the plaintiff has failed to plead "enough facts to state a

10

claim to relief that is plausible on its face," Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 127 S. Ct. 1955, 1974 (2007) (abrogating "no set of facts" language found in Conley v. Gibson, 355 U.S. 41, 45-46 (1957)). The facts alleged must be sufficient to "raise a right to relief above the speculative level." Twombly, 550 U.S. 544, 127 S. Ct. at 1965. This requirement "calls for enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of" necessary elements of the plaintiff's cause of action. Id. Furthermore, in order satisfy federal pleading requirements, the plaintiff must "provide the grounds of his entitlement to relief," which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Phillips v. County of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008) (brackets and quotations marks omitted) (quoting Twombly, 550 U.S. 544, 127 S. Ct. at 1964-65).

In considering a motion to dismiss, the court generally relies on the complaint, attached exhibits, and matters of public record. Sands v. McCormick, 502 F.3d 263 (3d Cir. 2007). The court may also consider "undisputedly authentic document[s] that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the [attached] documents." Pension Benefit Guar. Corp. v. White Consol. Indus., 998 F.2d 1192, 1196 (3d Cir. 1993). Moreover, "documents whose contents are alleged in the complaint and whose authenticity no party questions, but which are not

11

physically attached to the pleading, may be considered." Pryor v. Nat'l Collegiate Athletic Ass'n, 288 F.3d 548, 560 (3d Cir. 2002). However, the court may not rely on other parts of the record in determining a motion to dismiss. Jordan v. Fox, Rothschild, O'Brien & Frankel, 20 F.3d 1250, 1261 (3d Cir. 1994).

Generally, the court should grant leave to amend a complaint before dismissing it as merely deficient. See, e.g., Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc., 482 F.3d 247, 252 (3d Cir. 2007); Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002); Shane v. Fauver, 213 F.3d 113, 116-17 (3d Cir. 2000). "Dismissal without leave to amend is justified only on the grounds of bad faith, undue delay, prejudice, or futility." Alston v. Parker, 363 F.3d 229, 236 (3d Cir. 2004).

The defendants argue that the plaintiff's complaint should be dismissed pursuant to Fed.R.Civ.P. 12(b)(6) on the basis that the plaintiff has failed to allege sufficient personal involvement on behalf of defendant Holt in order to state a claim against him, (Doc. No. 85, p. 13), and because respondeat superior cannot form the basis of a Bivens action, (Doc. No. 85, pp. 13-14).

As with claims brought pursuant to 42 U.S.C. §1983, under Bivens[8],

_____

[8]A civil rights claim brought under Bivens is the federal counterpart to an action brought under §1983. The same legal principles govern both §1983 and Bivens claims. Brown v. Philip Morris Inc., 250 F.3d 789, 800 (3d Cir.
(continued...)

"[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia [or the Federal government], subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . ."

42 U.S.C. §1983. As with §1983, Bivens creates no substantive rights; rather, Bivens allows "a citizen suffering a compensable injury to a constitutionally protected interest [to] invoke the general federal-question jurisdiction of the district court to obtain an award of monetary damages against the responsible federal official." Butz v. Economou, 438 U.S. 478, 504 (1978). To state a claim under Bivens, the plaintiff must show that the defendant, acting under color of Federal law, deprived him of a right secured by the Constitution or laws of the United States. Brown, 250 F.3d at 800.

Individual liability in a civil rights action is personal in nature, and a defendant is liable only if he was personally, affirmatively involved in the alleged malfeasance. C.N. v. Ridgewood Bd. of Educ., 430 F.3d 159, 173 (3d Cir. 2005); Robinson v. City of Pittsburgh, 120 F.3d 1286, 1294 (3d Cir. 1997), *abrogated in part on other grounds by* Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53 (2006) and by Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 753-54 (1998) (citing Rhode v. Dellarciprete, 845 F.2d 1195, 1207 (3d

---

[8](...continued)
2001); Paton v. LaPrade, 524 F.2d 862, 871 (3d Cir. 1975).

Cir. 1988). Further, "[b]ecause vicarious liability is inapplicable to Bivens and §1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the constitution." Ashcroft v. Iqbal, --- U.S. ----, 129 S.Ct. 1937, 1948, 173 L.Ed.2d 868 (2009) (collecting cases).

The Third Circuit Court of Appeals has yet to directly address whether respondeat superior liability is available in Bivens claims. See Young v. Quinlan, 960 F.2d 351, 358 (3d Cir. 1991), *superseded by statute on other grounds*, 42 U.S.C. §1997e(a), *as recognized in* Nyhuis v. Reno, 204 F.3d 65 (3d Cir. 2000). However, the Third Circuit has established that respondeat liability is unavailable for §1983 claims, and that Bivens claims are the federal counterpart of a §1983 suit. See Francis v. Dodrill, 2005 WL 2216582, at \*2 (M.D.Pa.) (Munley, J.) (citing Rode v. Dellarciprete, 845 F.2d 1195, 1208 (3d Cir. 1988) (holding that respondeat superior is unavailable in §1983 claims) and Paton v. La Prade, 524 F.2d 862, 871 (3d Cir.1975) (holding that Bivens is the federal counterpart to §1983)).

The Third Circuit has indicated in non-precedential cases that respondeat superior liability may not be available in Bivens actions. See Parker v. United States, 197 Fed. App'x 171, 173 n.1 (noting that "[b]ecause liability under Bivens . . . may not be based on the doctrine of respondeat superior, [the] defendants were properly dismissed."); Balter v. United States,

172 Fed. App'x 401, 403 (3d Cir. 2006) (holding that the district court properly granted a motion to dismiss when the defendant had no direct involvement and was sued based upon respondeat superior liability).

Further, numerous other circuits have held that there is no respondeat superior liability in Bivens actions. See, e.g., Ruiz Rivera v. Riley, 209 F.3d 24, 28 (1st Cir. 2000); Laswell v. Brown, 683 F.2d 261, 268 & n.11 (8th Cir. 1992); Kite v. Kelly, 546 F.2d 334, 337-38 (10th Cir. 1976).

In the instant action, the only allegation with respect to defendant Holt is that defendant Orner was acting "under the authority of [defendant Holt]." There are no allegations that defendant Holt was personally involved in the incident which led to the plaintiff's injuries on June 17, 2009. As such, the plaintiff has failed to allege sufficient personal involvement on his behalf. Moreover, it is apparent from the plaintiff's statement that the plaintiff is attempting to hold defendant Holt liable on the basis of his supervisory position. Therefore, the plaintiff's complaint should be dismissed with respect to defendant Holt for his failure to state a claim upon which relief can be granted.

The court notes that in his opposing materials, the plaintiff argues that defendant Holt is liable to the extent that he was made aware of the incident through the plaintiff's administrative remedies and denied the same. However, participation in the after-the-fact review of a grievance is not enough to

establish personal involvement on the part of defendant Holt. See, e.g.,
Brooks v. Beard, 167 F. App'x 923, 925 (3d Cir. 2006) (not published)
(allegations that prison officials and administrators responded inappropriately
to inmate's later-filed grievances do not establish the involvement of those
officials and administrators in the underlying deprivation). See also Bobko v.
Lavan, 157 F. App'x 516, 518 (3d Cir. 2005) (not published) (Individuals who
were not personally involved in events underlying his prisoner's claims or who
merely failed to respond to his letters about his grievance were not liable
under §1983); Torres v. Clark, 2010 WL 3975640 (M.D.Pa.) (Caldwell, J.);
Ramos v. Pennsylvania Dep't of Corr., 2006 WL 2129148 (M.D.Pa.) (McClure,
J.).

In addition, the plaintiff argues that defendant Holt is liable because the
plaintiff informed defendant Holt that the medical department was "dumbing
down" the seriousness of his injuries, but that defendant Holt deferred to the
medical staff's judgment in treating the plaintiff. The plaintiff argues that
defendant Holt was therefore deliberately indifferent to his serious medical
needs. However, if a prisoner is under the care of medical experts,
non-medical prison officials are justified in believing the prisoner is being
treated properly and is in capable hands. Ball v. Famiglio, 2011 WL 1304614
(M.D.Pa.) (Kane, J.) (citing Spruill v. Gillis, 372 F.3d 218, 236 (3d Cir. 2004)).
Further, non-medical personnel cannot be held to be deliberately indifferent

16

merely because they fail to respond to complaints of an inmate already being treated by prison medical staff. Id. (citing Gusman v. Bureau of Prisons, 231 F. App'x 179, 181 (3d Cir. 2007)).

In light of the above, the defendants' motion should be granted to the extent that the plaintiff's complaint should be dismissed with respect to defendant Holt.

To the extent that the defendants' motion is brought as one for summary judgment, summary judgment is appropriate if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c).

The Supreme Court has stated that:

> ". . . [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. The moving party is 'entitled to judgment as a matter of law' because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof."

Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986).

The moving party bears the initial responsibility of stating the basis for its motion and identifying those portions of the record which demonstrate the absence of a genuine issue of material fact. Id. The moving party can discharge that burden by "showing . . . that there is an absence of evidence to support the nonmoving party's case." Id. at 325.

Issues of fact are genuine "only if a reasonably jury, considering the evidence presented, could find for the nonmoving party." Childers v. Joseph, 842 F.2d 689, 693-94 (3d Cir. 1988) (citations omitted). Material facts are those which will effect the outcome of the trial under governing law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The court may not weigh the evidence nor make credibility determinations. Boyle v. County of Allegheny, 139 F.3d 386, 393 (3d Cir. 1998). In determining whether an issue of material fact exists, the court must consider all evidence and inferences drawn therefrom in the light most favorable to the nonmoving party. Id. at 393.

If the moving party meets his initial burden, the opposing party must do more than raise some metaphysical doubt as to material facts, but must show sufficient evidence to support a jury verdict in its favor. Id.

In support of their motion for summary judgment, the defendants have submitted a statement of material facts, the following of which are deemed

18

admitted[9]. The plaintiff was sentenced by the United States District Court for the Northern District of Alabama to a 70-month term of imprisonment for being a felon in possession of a firearm. The plaintiff's projected release date is December 18, 2012, via good conduct time release.

The plaintiff alleges that defendant Orner, acting under Warden Holt's authority, exhibited cruel and unusual punishment and deliberate indifference by purposefully slamming his fingers in a cell door while performing count. The plaintiff also alleges that defendant Orner "showed negligence by rushing (because of being late) to lock inmates in their assigned cells." As a result of the incident, the plaintiff alleges that he suffers from "constant pain and suffering" and also, that the injury "accelerated arthritis" that will "no doubt" prevent him from carrying on his carpenter and concrete finishing trade to his "fullest capacity." The plaintiff alleges that he suffers pain in his small ringer

---

[9]Contrary to L.R. 56.1, the plaintiff has failed to respond to the defendants' statement of facts in the required manner. Rather than providing a separate, short and concise statement of the material facts, responding to the statement provided by the defendants, including references to the parts of the record that support the plaintiff's statements, the plaintiff merely indicates in response to the vast majority of the defendants' statements that the statements are "true," "not true," or "half true." This is despite the fact that the plaintiff was advised of the requirements of L.R. 56.1 in the standing practice order issued to him on June 10, 2010, and after the defendants' counsel advised the plaintiff in the introductory paragraph to their statement of material facts that ". . . pursuant to Local Rule 56.1, all facts set forth in this statement will be deemed admitted unless controverted by Brazelton with references to the record supporting his position." (Doc. No. 84). As such, the defendants' statements are deemed admitted in accordance with L.R. 56.1.

finger and joints, numb fingertips and that he has increasing difficulty moving those two fingers. The plaintiff is seeking compensatory and punitive damages, future medical and rehabilitation treatment for his hand, and injunctive relief ordering defendant Orner's suspension without pay.

On June 17, 2009, defendant Orner was working as the Unit Officer in Unit C-1, where the plaintiff was housed. At approximately 3:45 p.m., defendant Orner flickered the day room lights by turning them on and off one or two times. Inmates are aware that this action signifies count is to begin and they need to go back to their cells. Immediately after defendant Orner flickered the lights, he yelled "cell *** (number)" where he would begin locking inmates into their cells. This cue re-confirms that the inmates should be moving back to their cells for count and advises the inmates which cell the officer will start locking first.

These count procedures are the same procedures defendant Orner used since he started his career with the Bureau of Prisons. The only time the procedure is deviated from is in an emergency situation when the inmates would be verbally instructed to return to their cells and defendant Orner would immediately begin locking inmates into their cells without flickering the light switches. On the day of the incident at hand, there was not an emergency.

Defendant Orner recalls the incident that the plaintiff alleges, but does not recall the cell number that he locked first on that day. Defendant Orner

20

was at the plaintiff's cell door, cell 220, which opened to the left from the outside, and was waiting for the plaintiff to enter his cell. The plaintiff walked toward the door, and as he entered his cell, defendant Orner began to close he door in order to secure it. Defendant Orner heard the plaintiff yell and so he stopped prior to securing the door. The plaintiff stated to defendant Orner that he had shut his hand in the cell door and defendant Orner asked the plaintiff to see his hand. Defendant Orner noticed a blood blister on the plaintiff's left finger. Defendant Orner noticed no cut or blood other than the blood blister under the plaintiff's skin. Because the plaintiff's situation was not an emergency, he informed the plaintiff that he would call medical and continued to secure the cells doors for the 4:00 p.m. count. The plaintiff indicated that he did not need medical attention, but was told that he would be instructed to report to medical for an evaluation anyway.

After securing the plaintiff and the other inmates in their cells, defendant Orner returned to the Unit Office and called Health Services, which informed defendant Orner to send the plaintiff to Health Services after the 4:00 p.m. count cleared.

After the 4:00 p.m. count, defendant Orner sent the plaintiff to Health Services. The plaintiff told defendant Orner that it was his fault that he got his fingers pinched in the door because he was attempting to step over a towel from the threshold. Defendant Orner had no further communication with the

plaintiff after this incident.

On the day of the incident at 6:50 p.m., the plaintiff was evaluated by Health Services' medical staff for pain in his left pinky and ring finger. At that time, the plaintiff reported that "[he] got his left hand caught in the cell door." The plaintiff complained of "[s]harp burning intermittent pain left hand 4[th] & 5th digits." Upon examination, the plaintiff was noted to have swelling and ecchymosis, which is the passage of blood from ruptured blood vessels into subsantaneous tissue, marked by a purple discoloration of the skin. No deformities were noted; however, the plaintiff had decreased active range of motion. Numbness and tingling were denied. The plaintiff was given a splint, prescribed Motrin, and directed to return to Health Services the next day for follow-up. The plaintiff was given an idle for June 17, 2009, through June 30, 2009.

On June 18, 2009, the plaintiff returned to Health Services for follow-up with no significant findings being noted. The plaintiff was instructed to continue to wear the splint and take Ibuprofen.

On June 24, 2009, the plaintiff had an x-ray of his left ring and index fingers due to pain, the findings of which were negative.

On July 9, 2009, the plaintiff was evaluated for, among other things, discomfort in his left pinky and ring fingers. Upon examination, the plaintiff was noted to have full range of motion and no significant findings.

22

On July 27, 2009, a request was completed for an MRI of the plaintiff's left ring and pinky fingers in light of his complaints of chronic pain. The MRI was conducted on the following day which revealed possible slight swelling, intact boney structures, no fractures, no arthritic changes and no fluid collection. The plaintiff was scheduled to report to Health Services for discussion of the MRI on August 17, 2009, but failed to show.

On October 22, 2009, the plaintiff requested medication for his fingers on his left hand indicating that they "bother" him when it gets cold outside. The plaintiff was prescribed Piroxicam, a NSAID to treat pain or arthritis.

With respect to the plaintiff's work history, the defendants' materials provide that the plaintiff testified that he was trained by and worked with his father as a concrete finisher during summers while in high school. Between high school and his present incarceration, the plaintiff worked in a Tyson Chicken Factory[10]; was in prison from 1988-1992; and again from 1994-1997; and was unemployed from 1997 through 2006. The plaintiff last worked as a concrete finisher for eight or nine months from "'06 to September, '08" earning $12.00 to $13.00 per hour.

While incarcerated at USP-Canaan, the plaintiff worked in Food Services from June 2, 2009, through January 2, 2010, where he received

---

[10]The defendants note that it is unclear what time frame the plaintiff worked in the factory since he testified that he worked there from 1987 to 1992 or 1990, but also testified that he was in prison from 1988 to 1992.

satisfactory to fair evaluations. The plaintiff was on idle from June 20, 2009, through June 24, 2009, for his injured fingers. He reported back to work on June 26, 2009. There is no recollection by the Assistant Food Services Administrator of the plaintiff making any complaints regarding his fingers during his employment in food services.

From January 1, 2010, through January 5, 2010, the plaintiff was placed on unassigned duty status. On January 6, 2010, the plaintiff was assigned to the landscaping detail. The plaintiff was assigned to work in facilities until January 18, 2011. The facilities foreman indicated that the plaintiff was a good worker who showed up on time. He completed various jobs including shoveling snow, clearing clogged drains, painting, and cutting grass. It was indicated that the plaintiff never complained and completed any task that was assigned. The plaintiff's foreman never witnessed him wearing a splint on his finger or hand, nor did he complain of pain during the time he worked in facilities. The plaintiff indicated that he had no problems working in facilities painting because he is right handed.

From January 19, 2011, through March 15, 2011, the plaintiff was assigned to the UNICOR bindery factory, where he was reported to be a good worker. The plaintiff's duties included assembling paper boxes, inserting slips and dvds into folders, working with shrink wrap, and lifting boxes which weighed over twenty-five pounds. The plaintiff did not complain of pain in his

24

hand or fingers and never wore a protective device while in UNICOR.

As of the time of the defendants' filing, the plaintiff was assigned to the painting work detail. He has not been noted to complain of hand or finger pain and does not wear a splint.

Based upon the above undisputed facts, the defendants argue that they are entitled to they are entitled to qualified immunity with respect to any Eighth Amendment claim brought by the plaintiff. (Doc. No. 85, pp. 14-22)[11]. While the court finds the defendants' argument well-taken, it also finds that any such analysis is unnecessary. To this extent, in bringing any Eighth Amendment claim, the plaintiff must satisfy a two-part analysis: (1) the objective component requires that any deprivation be sufficiently serious and (2) the subjective component requires that the defendant must have been deliberately indifferent. Young v. Quinlan, 960 F.2d 351, 359-60 (3d Cir. 1992). Here, despite the allegations set forth in his complaint, the plaintiff testified at his deposition that defendant Orner was not deliberately indifferent, but only negligent. Specifically, the plaintiff testified as follows:

> Q.    Okay. And did Officer Orner know your hand was caught in the door at the time it happened?

---

[11]The defendants include an argument with respect to any potential use of excessive force claim brought by the plaintiff. However, the plaintiff indicates in his responding materials that he is not attempting to bring any such claim. Therefore, the defendants' motion for summary judgment should be dismissed on this basis.

A.    I don't think that he was paying attention. You know, to my knowledge, he wasn't. He was just – you know, he was just in a hurry. I ain't saying that he did it on purpose. I feel like that he was just in a hurry and he – you know, his neglect caused it.

Q.    Okay. So you don't think he did it on purpose, you don't think there was any intent to close your hand in the door?

A.    I don't think that it was no intent. I think that he was in a hurry and he was just doing his thing fast. You know, he was late for work. You know, he was late. He didn't call count. He was just trying to catch up.

Q.    You guys didn't have an argument or anything beforehand where he was mad at you or anything that would cause him to act out or anything like that?

A.    No. I mean, all I – I just told him. I was like, man, you call count, man. If you would've called count, hit the lights, everybody be locking down. You know, that's all I said to him.

Q.    So you think it was just neglect rather than intent?

A.    I know it was neglect. I'm not going to say something to mess this man's career up and just dog the officer.

Q.    Okay. Well, in some of your – some of your – some of your BP – and I don't know what this is.

A.    You talking about like with a deliberate intent, where I say that?

Q.    Yeah. You say this was no accident.

A.    Yea, after you --

Q.    Rather it was an assault by Officer Orner on my person in violation of my Eighth Amendment against cruel and unusual punishment.

A.    I feel like – I feel like, you know, after everybody started antagonize me and messing with me, the officers were really bothering me, they start taking my stuff, they start taking my legal work.

Q.    This is after the incident?

A.    Yeah. That's when – you know, when you – you trying to do the right process, go through the right channels, file properly and do it on a real man level, and officers start coming in, bothering you, taking your legal work out your – out of your bunks, there's something wrong. What, are you all trying to hide something? If he didn't do it on purpose

> and it was – you know, it was just pure neglect, it was just
> neglect, why are you all bothering me? You know what I'm
> saying? Why are you all bothering me. I felt like it was just
> neglect on his part.

(Doc. No. 84, Ex. D, pp. 44-46). Moreover, in response to the defendants'

motion the plaintiff indicates that "Officer Orner I believe **by accident** caused

me extreme pain and permanent lifetime damage to my wrist, hand and

finders." (Emphasis added). Because the plaintiff has repeatedly conceded

that there was no deliberate indifference on defendant Orner's part, the

defendants are entitled to summary judgment on the plaintiff's Eighth

Amendment claims.

Finally, the defendants argue that they are entitled to summary

judgment with respect to the plaintiff's FTCA claim, (Doc. No. 85, pp. 23-26),

and that, in the alternative, should the court find that the plaintiff has pled a

proper FTCA claim, such claim should be dismissed as frivolous as the

plaintiff has established only *de minimus* damages. (Doc. No. 85, pp. 26-28).

In his response to the defendants' motion, the plaintiff indicates that he

is not attempting to assert an FTCA claim, but only asserts <u>Bivens</u> claims.

Therefore, the defendants' motion for summary judgment should be dismissed

on this basis.

27

On the basis of the foregoing, **IT IS RECOMMENDED THAT:**

**(1)**  the plaintiff's motion for sanctions, **(Doc. No. 29)**, be

 **DENIED**;

**(2)**  the defendants' motion to dismiss and for summary

 judgment, **(Doc. No. 78)**, be **GRANTED IN PART AND**

 **DISMISSED IN PART**, as discussed above; and

**(3)**  the case be closed.

s/ *Malachy E. Mannion*
**MALACHY E. MANNION**
**United States Magistrate Judge**

**Date:** August 4, 2011

O:\shared\REPORTS\2010 Reports\10-1223-01.wpd